James R. LUKOWSKI, et al., Plaintiff

v.

CSX TRANSPORTATION, INC., et al., Defendant

Nos. 3:03 CV 7031, 3:03 CV 7032.

United States District Court, N.D. Ohio, Western Division.

Aug. 13, 2004.

George T. Brugess, Hoey, Farina & Downes, James L. Farina, Hoey, Farina & Downes, James T. Foley, Hoey, Farina & Downes, Richard A. Haydu, Hoey, Farina & Downes, Robert J. Drummond, Hoey, Farina & Downes, Chicago, IL, for James R. Lukowski, Plaintiffs.

Garrick O. White, Anspach, Meeks & Nunn, Toledo, OH, Harold Abrahamson, Abrahamson Reed and Adley, Hammond, IN, James A. Bax, Brasher Law Firm, St. Louis, MO, Richard F. Ellenberger, Anspach, Meeks & Nunn, Mark J. Metusalem, Nationwide Mutual Insurance Company, Toledo, OH, R. Kent Rowe, Rowe and Rowe, South Bend, IN, for CSX Transportation, Inc., Estate of John D. Reese, Maura Gossard, As Administrator of the Estate of John D. Reese and Individually, Defendants.

## ORDER

CARR, District Judge.

This is an FELA case in which the plaintiffs, crew members of a CSX Transportation train, seek to recover for injuries sustained in a fatal grade crossing accident. Plaintiffs' claims against the estate of the decedent, who drove a pickup truck and trailer into the train's path, and the estate's administrator have been dismissed on a motion for summary judgment filed by those defendants. Pending is a motion for summary judgment filed by the railroad. For the reasons that follow, the motion shall be granted.

The driver who was killed in the collision, John D. Reese, was proceeding north on Rumbaugh Road in Allen County, Ohio, at about 4:00 p.m. on July 16, 2000. The road's crossing with a CSX single line track, which runs East to West, was "unguarded": i.e., only cautionary signs, a stop line in the pavement, standard crossbucks, and a sign warning of increased

train traffic would be seen as a motorist approached the crossing.

Plaintiffs' train was proceeding from East to West at fifty miles per hour. Its warning equipment—horn, whistle, and ditch lights—was operating properly. As they approached the crossing, plaintiffs noticed "a blotch of white," "a flash of light" headed toward the crossing; they did not, however, apprehend that the decedent's truck would be entering their path until it had begun to cross at an estimated five miles per hour. At that point, the plaintiffs could not slow their train sufficiently to avoid the collision.

As they came toward the crossing, plaintiffs' view to the south of Rumbaugh Road was obscured by buildings on the adjacent property. In addition, branches and leaves of a large tree on that property hung over the right of way, though not in the path of the train. According to the plaintiffs, if they had been able to see the decedent's truck sooner, they would have been able to stop the train before colliding with it.

On impact, both plaintiffs were bounced around. Neither was physically injured, aside from some minor bruises that did not require medical attention. Thus, while there was some physical impact between the plaintiffs and their locomotive at the time of the collision, neither plaintiff was physically injured as a result of that impact.

Once the train, which had been placed into emergency braking just before the collision, stopped, the conductor, plaintiff James Lukowski, went back to the crossing to investigate. He saw the wreckage of the truck and trailer and Reese's decapitated body. When Lukowski did not return to the locomotive, plaintiff Lester Blauvelt went back to the crossing, where he encountered Lukowski in shock and saw what he had seen.

Photos of the scene taken the following day show that the view of the crossing was not, contrary to plaintiffs' contentions and those of their expert, who viewed the scene nearly four years after the accident, obstructed by vegetation. As noted, though, buildings and the overhanging branches of a large tree obscured the view as the locomotive approached.

## Discussion

Plaintiffs claim that the railroad is liable under the FELA because it failed to control vegetation along the right of way approaching the crossing and properly construct, maintain, and repair the crossing, and notify the crew of the existence of dangerous conditions before and at the crossing.[1] In addition, plaintiffs contend that the warning devices alerting motorists to the crossing were not properly placed.[2]

To the extent that plaintiffs contend that the railroad failed to control vegetation other than the overhanging branches, they cannot prevail. The photos taken the day after the accident show indisputably that track side vegetation was properly controlled, and that such control met the standards established under FELA and Ohio law.

1. Plaintiffs have split their claim concerning failure to remove vegetation into several contentions. Those manifold expressions of plaintiffs' complaint about the vegetation and their obscured view raise, in essence, a single claim: namely, that the railroad had a duty, which it breached, to control the vegetation so that vehicle traffic approaching from the South could be observed in sufficient time to enable the crew to respond to any dangers posed by such traffic.

2. Plaintiffs' complaint contains several other claims. Because plaintiffs have not responded to the defendant's motion for summary judgment as to those claims, those claims are subject to dismissal without further discussion.

A jury could find, however, that, as alleged by plaintiffs, their view was, in fact, obstructed by the untrimmed branches hanging over the railroad's right of way. To be sure, there were other obstructions (namely, the buildings on the adjacent property), but the extent to which the view of approaching traffic was limited by those structures, on the one hand, and the branches, on the other, is not clear in the record. For now, that suffices to raise a genuine issue of material fact with regard to the extent to which, due to the branches hanging over the right of way, plaintiffs were not able to see the decedent's truck as it neared the crossing.[3]

■ In this case plaintiffs are not seeking to recover for physical injuries from the accident. They claim, rather, that Reese's death and the sight of his headless body have caused severe post traumatic stress and entitle them to recover damages for their emotional distress.

■ The Supreme Court held in *Consolidated Rail Corporation v. Gottshall,* 512 U.S. 532, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994), that damages for emotional distress under the FELA are premised on the "zone of danger" test. This standard

> limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct. That is, "those within the zone of danger of physical impact can recover for fright, and those outside of it cannot."

*Id.* at 547–48, 114 S.Ct. 2396 (citation omitted).

In this case, the plaintiffs sustained a minor physical impact without any resulting physical injury. At least arguably, they were within the "zone of danger"—i.e., an area in which they might have apprehended a risk of physical injury to themselves as a result of colliding with the decedent's truck. Thus, for purposes of this decision, I deem their claim to come within the *Gottshall* rule.

■ Recovery on such claim depends, however, on a showing that the emotional injuries resulted from a fear for one's own safety, rather than for the safety of others. As stated in *Gottshall,* "a worker within the zone of danger of physical impact will be able to recover for emotional injury caused by fear of physical injury to himself, whereas a worker outside the zone will not." 512 U.S. at 556, 114 S.Ct. 2396; *see also Marschand v. Norfolk and Western Ry. Co.,* 876 F.Supp. 1528, 1537 (N.D.Ind.1995) (plaintiff can "recover only for . . . emotional distress caused by fear for his own safety.").

Plaintiffs have neither alleged nor shown that the emotional consequences of the accident resulted from any apprehension of possible injuries to themselves. On the contrary, they attribute the disabling consequences of the accident to what they saw in its aftermath, and a sense of guilt at not having been able to see the truck and stop the train.

**3.** Defendant has not shown that it did not have a duty to clear its right of way of obstructions which, though located on adjacent property, impeded the view of its crew members. Under Fed.R.Civ.P. 56(c), the defendant has the burden, at this stage, of showing that it is entitled to judgment as a matter of law. It has not done so; were there to be a trial plaintiffs would have the burden of showing that the railroad had such duty.

To the extent that plaintiffs assert that the crossbucks and other warning signs may have been misplaced, no jury could find that such misplacement more likely than not caused the accident. There is simply no reason to believe that the slight corrections in placement that might have been needed to have the warnings conform to statutory or regulatory requirements would have caused the decedent to stop.

I conclude, accordingly, that the plaintiffs cannot prevail on their FELA claim against the railroad, even if the railroad wrongfully failed to remove an overhanging obstruction of their view as they approached the intersection. Though the plaintiffs sustained a minor physical impact, and may have been within the zone of danger created by that collision, their resulting emotional injuries did not arise as a result of a fear of harm to themselves.

### Conclusion

It is, accordingly,

ORDERED THAT defendant's motion for summary judgment be, and the same hereby is granted.

So ordered.